HENRY JACOBSMA, Plaintiff-Appellee, *v.* GOLDBERG'S FASHION FORUM, Defendant-Appellant.

(No. 57176;

First District (1st Division)—September 24, 1973.

Medard M. Narko and James B. Sparrow, both of Chicago, for appellant.

Fred Lambruschi, of Chicago, (Herbert P. Veldenz, of counsel,) for appellee.

Mr. PRESIDING JUSTICE BURKE delivered the opinion of the court:

This is an appeal from a judgment in a personal injury action for damages suffered by the plaintiff when he attempted to stop a shoplifter who was running out of the defendant store. The case was tried before a jury, which rendered a verdict in favor of the plaintiff. The defendant appeals on the grounds that there was no breach of its duty to the plaintiff and that the introduction of prejudicial testimony and comment requires reversal.

On January 15, 1966, the plaintiff and his wife entered the defendant store in the Ford City shopping center. At a point about 20 feet inside the store, the plaintiff observed a man later identified as the floor manager, standing at the end of a straight aisle, about 75 feet from him. The manager shouted "Stop thief" and pointed in the direction of the plaintiff. There was another man about 50 feet from the plaintiff, between him and the manager, running toward the plaintiff. The plaintiff

pushed his wife aside and grabbed the running man. The two men fell to the floor, with the plaintiff landing on his left shoulder, underneath the other man. No one came to the assistance of the plaintiff while he struggled with the man. In the struggle some ladies' garments fell from under the man's coat. The man got up and ran out of the store. He was pursued unsuccessfully by the manager.

The plaintiff could not rise unassisted. He was helped to a back room, where he waited for an ambulance. When the plaintiff arrived at Christ Community Hospital, he was informed that he had dislocated his left shoulder and was admitted to the hospital. He was placed in a body cast in which he remained for about four weeks. Medical bills were introduced in evidence. Evidence of lost earnings was also introduced. The doctor who treated the plaintiff was deceased at the time of trial, but the plaintiff presented testimony of a medical expert as to the plaintiff's present condition.

■■ In order to recover in an action for negligence, the plaintiff must establish that the defendant owed him a duty which was breached and that the breach was the proximate cause of injury to him. (*Neering v. I.C.R.R. Co.*, 383 Ill. 366, 50 N.E.2d 497.) Our first inquiry is whether the defendant owed some duty of care to the plaintiff and, if so, the extent of that duty.

It is conceded that the plaintiff was a business invitee upon entering the clothing store. Thus, the defendant owed him a duty to exercise ordinary care for his safety. (*Bogovich v. Schermer*, 16 Ill.App.2d 197, 147 N.E.2d 711.) But his injury occurred because of his attempt to restrain the shoplifter, an activity outside the normal business invitation. The defendant contends that the plaintiff was at that point a volunteer to whom the defendant owed only the duty not to wilfully or wantonly cause him injury.

■■ In refusing to instruct the jury on the issue of whether the plaintiff was a volunteer, the trial court determined that he was not a volunteer as a matter of law. Whether an invitee has lost that status is generally a question of fact for the jury. (*Jones v. Granite City Steel Co.*, 104 Ill.App.2d 379, 244 N.E.2d 427.) But where all the facts and inferences therefrom lead to only one conclusion, the matter may be decided without recourse to a jury. (*Johnson v. Shell Oil Co.*, 131 Ill. App.2d 1032, 264 N.E.2d 278.) The plaintiff's agent, the manager who called for help, testified that he had the authority to do so. Even if he did not have the express authority, this would be the kind of emergency in which such authority would be implied. (*Lambert v. Senne Funeral Home, Inc.*, 343 Ill.App. 136, 98 N.E.2d 519.) That the call for help was an invitation to the plaintiff is also borne out by the record.

The manager called "Stop thief," and his testimony indicates that this was a general call for assistance:

"Q. And did you as a matter of fact call and ask for assistance when this shoplifter started to run with the merchandise under his coat?

A. If I recall, I called out to my girls to. I think the exact words were, 'Stop thief.'

Q. Well, where were your girls?

A. Throughout the store.

Q. You mean you're telling us that you told the girls to stop the thief?

A. No, I pursued him, but he had a good head start on me. And as a means of attracting attention, I yelled, 'Stop thief,' which means that anybody, any of my girls in the vicinity—perhaps the police if they used it, just—just struck me as being the proper thing to do."

The fact that the manager also testified that he did not see the plaintiff at the time he called is immaterial in view of the general nature of the cry, the fact that it was admittedly a call for assistance, and the fact that to the plaintiff it appeared that the manager was speaking directly to him. The physical positions of the three, the plaintiff, the shoplifter and the manager, who was pointing in the direction of the plaintiff, justified the plaintiff's conclusion that he was requested to assist in stopping the thief. This conclusion is further buttressed by the facts that the plaintiff was physically larger than the shoplifter and that the plaintiff was the only man other than the shoplifter and the manager in the store, which had few customers at the time. Finally, the plaintiff's purpose in attempting to restrain the shoplifter was to benefit the defendant, a purpose which has been found to be sufficient to sustain invitee status. (*Augsburger v. Singer*, 103 Ill.App.2d 12, 242 N.E.2d 436.) The court did not err, therefore, in refusing the instructions on volunteer status.

The defendant makes much of the fact that before the incident the plaintiff had not been in the store and could not have known of the manager's position with the defendant. Hence, the defendant concludes, the plaintiff could not have believed he was undertaking to assist the defendant. The facts, however, establish the plaintiff's basis for such a belief. The incident occurred in January, with the weather such that the plaintiff and his wife wore coats. The manager wore no coat. The manager was at the rear of the store behind a counter when the plaintiff first saw him. The plaintiff would not logically assume that the manager was a customer trying on clothes (to explain his being coatless), be-

cause the defendant sells ladies' clothes exclusively. Even with events moving as swiftly as they did, the plaintiff could reasonably believe that the manager had authority to request help of him in stopping the fleeing man.

■■ Having determined that the plaintiff was not a volunteer as a matter of law, we are left with the question whether the defendant breached its duty of ordinary care for the plaintiff. It has been held that there is no breach of the duty of reasonable care owed to one lawfully on premises for injuries caused by the criminal acts of third persons, where there was no knowledge of previous incidents or special circumstances which would charge the owners with knowledge of the dangers and the duty to anticipate them. (*O'Brien v. Colonial Village, Inc.*, 119 Ill.App.2d 105, 255 N.E.2d 205.) In the case before us, the defendant had actual knowledge through its sales staff that the shoplifter who caused the injury had three days previously attempted to steal clothing from the defendant. With the knowledge of this man's prior crime, the defendant became charged with the responsibility to protect its invitees from other illegal acts by him. *Neering v. Illinois Central R.R. Co.*, 383 Ill. 366, 50 N.E.2d 497.

■■■ Whether that obligation was met was a question for the jury in this case. Their verdict in the plaintiff's favor is supported by the record. The defendant had no security force of its own. Ford City policemen patrolled all the stores in the shopping center at intervals, less frequently than the manager wished. The defendant had no security devices on the order of mirrors or alarm systems to thwart shoplifters. Although in this appeal an attempt was made to construe the manager's shout as a warning, the manager's testimony indicates it was a request for assistance. No other attempt to warn the plaintiff is alleged. On these facts the jury could and did find the defendant negligent. As this court has said, the exposure of another to an unreasonable risk of harm is the critical element in a charge of negligence. (*Boyd v. Racine Currency Exchange, Inc.*, 8 Ill.App.3d 140, 289 N.E.2d 218.) The evidence in this case supports the jury's finding that such a risk was present here.

The defendant's next contention is that prejudicial testimony denied him a fair trial. We find no merit in the first argument of the defendant that testimony of the plaintiff's medical expert regarding the term "subcoracoid subluxation" was prejudicial because it was taken from a paid bill presented by the plaintiff. As the trial court found, substantially all of the expert's testimony was based on X-rays taken of the plaintiff's shoulders shortly before trial. The expert testified that the impaired condition of the plaintiff's left shoulder could have been caused by a dislocation some years earlier. The trial judge prevented any potential

prejudice when he instructed the jury to disregard any testimony concerning the disputed term.

The second argument concerns comments made in the opening statement of plaintiff's attorney that the defendant's agents had agreed to pay the plaintiff's medical bills when the plaintiff's wife called them from the hospital. The court later ruled inadmissible any such conversation on the ground that it constituted an offer of settlement. The defendant now argues that the opening statement thus prejudiced the defendant's case, as did a later reference to the person with whom the phone conversation took place. Regardless of whether the testimony was properly excluded, we find no prejudice resulting from the comments in question. There was no testimony as to the telephone conversation on which the plaintiff apparently relied for payment from the defendant. The jury was told that the attorneys' statements were not evidence in the case, and there is no indication that the verdict was influenced by the statements challenged.

■■ The defendant's final argument under this contention is that the plaintiff's attorney's closing argument contained prejudicial statements. In particular, the defendant refers to comments by the attorney on the plaintiff's public-spirit and virtue as the motivation for his act. This is not the kind of inflammatory and prejudicial statement which we would find merits reversal. *Bruske v. Arnold,* 100 Ill.App.2d 428, 241 N.E.2d 191.

The evidence presented a fact issue as to the breach of defendant's duty to the plaintiff. Applying the rule of *Pedrick v. Peoria & Eastern R.R. Co.,* 37 Ill.2d 494, 229 N.E.2d 504, we hold that the trial court correctly submitted this issue to the jury and did not err in denying the defendant's post-trial motions.

For the reasons stated, the judgment is affirmed.

Judgment affirmed.

GOLDBERG and EGAN, JJ., concur.