JOHN E. WELSH *et al.*, Plaintiffs-Appellants, v. WHITE CASTLE SYSTEMS, INC., Defendant-Appellee

First District (2nd Division)   No. 84—1126

Opinion filed May 21, 1985.—Rehearing denied June 26, 1985.

William J. Harte, Gerald E. Prendergast, and Debra O. Elder, all of William J. Harte, Ltd., of Chicago, for appellants.

Robert S. Soderstrom, Stephen T. Mikus, and Shaun McParland, all of McKenna, Storer, Rowe, White & Farrug, of Chicago, for appellee.

JUSTICE BILANDIC delivered the opinion of the court:

This is a common law negligence action brought by the plaintiffs, John E. Welsh and Cheryl Welsh, against defendant, White Castle Systems, Inc., for personal injuries sustained while on defendant's premises. The trial court granted defendant's motion for summary judgment. Plaintiffs filed this timely appeal.

On Friday evening, January 30, 1981, John E. Welsh and Cheryl Welsh, his wife, went bowling with their friends and neighbors, Paul Angone and his wife, Josephine. John was 28 years of age and his wife was 26. They resided in the Chicago area with their four children. After bowling, they stopped at a lounge and then proceeded to a White Castle hamburger restaurant at 79th and Pulaski in Chicago. They arrived at about 1 a.m. on Saturday, January 31, 1981. After parking about three feet from the entrance, John and Paul went into White Castle to purchase hamburgers. Their wives remained in the car, from which they had a clear view into the restaurant.

The restaurant and its adjacent parking area were well lighted. Approximately five people were ahead of them in line. Shortly thereafter, John and Paul observed two white boys, each approximately 18 years old, 5 feet 9 inches tall and weighing about 140 pounds. One of them took a napkin holder which belonged to White Castle, hid it inside his coat and both of them headed for the door. A uniformed armed security guard was a few feet away so John reported the theft to him. The guard went out the door in pursuit of the boys.

About a minute later, John and Paul received and paid for their order and returned to their car, which was about three feet from the exit. As they were about to enter the car, they heard shouts for help. They noticed the security guard was fighting with the boys. In response to his shouts for help, John and Paul proceeded toward the fight, which was taking place in the parking lot about 20 feet away. The guard did not have his gun drawn and they did not notice any weapon in the hands of the boys.

John was the first at the scene. He grabbed one of the boys. The next thing he remembered was that his head was on his wife's lap. John did not hear from the security guard again. He was taken by ambulance to Christ Community Hospital in Oak Lawn. He underwent emergency treatment and surgery for a collapsed lung, pierced liver and slashed throat, which he suffered as a result of stab wounds inflicted by one of the boys.

Ten days later, John was released from the hospital. After six weeks, he returned to work as a manager of tract search at a title company in Chicago. John, who is 6 feet 4 inches tall and weighs 195 pounds, was in good health prior to this occurrence. He now has scars on his side, stomach and throat as a result of the stabbing and the surgery that followed.

The restaurant is owned and operated by the defendant, White Castle Systems, Inc. The status of the security guard is not clear. The depositions do not establish the security guard's status except that he was on the premises, armed and in uniform. Defendant did not submit any affidavit as to whether he was an employee, loaned employee or otherwise. John E. Welsh sued for the injuries sustained and his wife, Cheryl, sued for loss of the society and companionship of her husband.

Plaintiffs' complaint alleges that the defendant had a duty to keep its premises in reasonably safe condition for use by the plaintiffs and others. They allege that defendant violated this duty by not providing proper security, did not have sufficient security guards, and failed to exercise proper procedures to remove a dangerous person from the premises.

The defendant filed a general denial, then submitted interrogatories to plaintiffs and took the depositions of plaintiffs. The depositions of the plaintiffs provide the basis for defendant's motion for summary judgment. Defendant's motion for summary judgment states, in part:

"3. *** As John Welsh was leaving the White Castle Restaurant, he heard a call for help from the security guard. At no time did he perceive himself in physical danger in the restaurant or in the parking lot. He was stabbed in the parking lot after he ran to help the security guard. ***

4. *** As a matter of law, defendant is under no duty to protect plaintiffs from danger of criminal activity which they subject themselves to."

It appears that defendant's theory is that the plaintiff was a volunteer and assumed the risk that led to his injury and, therefore, there is no liability on the part of defendant. Defendant's counsel asked plaintiff John E. Welsh:

"Q. You weren't in any danger until you ran up to those individuals, is that true?

A. True."

Plaintiff's wife was also questioned as follows:

"Q. Your husband wasn't in any physical danger until he ran up to the two boys, is that true?

A. Yes."

Plaintiffs had been at this White Castle location many times before. They noticed security guards but never noticed any criminal activity until January 31, 1981. At her deposition, Cheryl Welsh was asked:

"Q. Do you know who stabbed your husband?

A. Yes.

Q. Their name [sic]?

A. Thomas Real. That's all. Because that's what was told to me.

Q. Who told you that?

A. The police record.

* * *

Q. This was investigated by the City of Chicago?

A. Yes."

There is no further reference to any criminal investigation or prosecution that may have followed because counsel for defendant dropped this line of interrogation.

Defendant's counsel sought to portray plaintiff John E. Welsh as a drunken interloper who was the victim of his own folly. After asking

questions relating to drinking at the bowling alley and lounge prior to purchasing food at White Castle, counsel asked John E. Welsh:

"Q. Whose suggestion was it to get something to eat?

A. All of ours.

Q. After you left the lounge were you intoxicated?

A. No.

Q. Had you been intoxicated before?

A. No."

He also asked plaintiff's wife, Cheryl Welsh:

"Q. Was your husband intoxicated?

A. No.

Q. Was he feeling any effects from the drinks that you observed?

A. No."

Cheryl also testified that immediately after her husband was stabbed, while his head was on her lap, he was worried about who was going to replace him as coach of the seventh grade basketball team for the next game. This obviously created an issue with defendant's theory that plaintiff John E. Welsh was a drunken interloper at the time.

In granting defendant's motion for summary judgment, the trial court relied on *Gill v. Chicago Park District* (1980), 85 Ill. App. 3d 903, 407 N.E.2d 671, *appeal denied* (1980), 81 Ill. 2d 601. At the hearing, the court stated: "And as far as I'm concerned this instant case is the same as Gill, and I am sustaining the motion. Put in the order it's pursuant to Gill, period. Thank you, gentlemen."

In the *Gill* case, the plaintiff was attending a Chicago Bears football game at Soldier Field. During the third quarter, he left his seat to go to the washroom. While descending the stairs, someone attempted to pick his pocket. When the plaintiff turned around to see what was happening, he was thrown over the railing to the ground below. He sustained injuries for which he sued. The court held that the defendants had no duty to protect the plaintiff from the criminal assault because the illegal act was not reasonably foreseeable.

The facts in the instant case, however, appear to be more analogous to *Jacobsma v. Goldberg's Fashion Forum* (1973), 14 Ill. App. 3d 710, 303 N.E.2d 226. There, a customer and his wife entered a store at Ford City Shopping Center. The manager shouted "Stop thief," and pointed in his direction, so the customer grabbed a shoplifter and sustained injuries in the ensuing struggle. In a well-reasoned opinion written by Justice Joseph Burke, the court held:

"It is conceded that the plaintiff was a business invitee upon entering the clothing store. Thus, the defendant owed him a

duty to exercise ordinary care for his safety. [Citation.] But his injury occurred because of his attempt to restrain the shoplifter, an activity outside the normal business invitation. The defendant contends that the plaintiff was at that point a volunteer to whom the defendant owed only the duty not to wilfully or wantonly cause him injury.

In refusing to instruct the jury on the issue of whether the plaintiff was a volunteer, the trial court determined that he was not a volunteer as a matter of law. Whether an invitee has lost that status is generally a question of fact for the jury. [Citation.] But where all the facts and inferences therefrom lead to only one conclusion, the matter may be decided without recourse to a jury. [Citation.] The plaintiff's agent, the manager who called for help, testified that he had the authority to do so. Even if he did not have the express authority, this would be the kind of emergency in which such authority would be implied. [Citation.] That the call for help was an invitation to the plaintiff is also borne out by the record.

\* \* \*

\*\*\* Finally, the plaintiff's purpose in attempting to restrain the shoplifter was to benefit the defendant, a purpose which has been found to be sufficient to sustain invitee status. [Citation.] The court did not err, therefore, in refusing the instructions on volunteer status." 14 Ill. App. 3d 710, 712-13.

In *Lambert v. Paul W. Senne Funeral Home, Inc.* (1951), 343 Ill. App. 136, 98 N.E.2d 519, plaintiff employed defendant to conduct funeral services for his wife. While in the main chapel with friends and relatives, an employee of the defendant asked plaintiff to help stop a leak from the second-floor air-conditioning unit, which caused pools of water to drip into the chapel. Defendant knew that plaintiff was a machinist. While trying to stop the leak, defendant's employee accidentally struck plaintiff in the eye with a bulb that contained embalming fluid. This resulted in the loss of the sight of plaintiff's left eye.

The trial court instructed the jury that "a volunteer is one who introduces himself into matters that do not concern him by doing or undertaking to do something he is not bound to do" and that "the only duty a defendant has towards a volunteer is not to injure him wilfully." 343 Ill. App. 136, 137.

In reversing a judgment for the defendant, the court stated:

"The undisputed evidence shows that plaintiff did not introduce himself into the situation; \*\*\*

\*\*\* It would be a serious reflection upon the law if defend-

ant, under the undisputed facts of this case, owed only the duty to plaintiff not to injury him wilfully. Counsel for defendant, upon the oral arguments, conceded that if there had been a fire upon the premises at the time in question an emergency would exist that would warrant Urso in securing the help of plaintiff and that plaintiff in aiding Urso would not be a volunteer. The air conditioning trouble created a serious emergency and under such circumstances the law implied an authority in Urso 'to secure the help of other persons.' ***" 343 Ill. App. 136, 142-43.

The status of the security guard, taken in the light most favorable to plaintiffs, would be that of an agent of the defendant. As a business invitee, the defendant owed plaintiff a duty of reasonable care to provide for his safety. A question of fact is created as to the proper discharge of this duty when two 18-year-old boys brazenly stole the defendant's property in the shadow of the security guard and other employees of the defendant. Plaintiff, as a good citizen, alerted the guard of the theft. The guard's inept pursuit of the thieves, which resulted in his plea for help, raises further questions of fact regarding defendant's discharge of its duty to its business invitee.

Was the plaintiff behaving as a good citizen when he called attention to defendant's agent of a crime against its property and later responded to the pleas for help from defendant's agent, the security guard, who was the victim of a second crime? Had plaintiff not come to the rescue of defendant's agent, would the two young criminals have taken the guard's weapon and caused more harm to the defendant's property, employees and invitees?

In its brief, defendant seeks to place some distance between itself and the security guard by arguing that he was employed by a security agency with which defendant contracted. They seek to put him in the status of an independent contractor. However, defendant has not offered any evidence to support this contention, and we are compelled to disregard it. It is obvious that substantial questions of fact remain to be determined.

The principles by which we are guided in reviewing a trial court's disposition of a summary judgment motion are well settled. In *Littrell v. Coats Co.* (1978), 62 Ill. App. 3d 516, 379 N.E.2d 293, the court held:

> "The purpose of a summary judgment motion is not to litigate a factual issue, and although different inferences may be derived from even undisputed facts, the motion should be granted only where reasonable men could not arrive at different inferences from these undisputed facts. [Citation.] In the interpreta-

tion of the pleadings, the movant's motion for summary judgment and its supporting documents must be strictly construed and must leave no question as to the movant's right to judgment; conversely, in considering the motion, the respondent's counteraffidavits and supporting documents must be liberally construed. [Citation.] Furthermore, the remedy of summary judgment should be exercised with caution so that the respondent's rights to trial by jury and to present the factual portion of his case are not usurped where there is a material factual dispute. [Citation.]" 62 Ill. App. 3d 516, 519-20.

Accordingly, we find that the trial court erred in granting defendant's motion for summary judgment.

The judgment of the circuit court of Cook County is reversed and the cause is remanded for further proceedings consistent with the views expressed herein.

Reversed and remanded.

STAMOS, P.J., and PERLIN, J., concur.