JERRY TENNANT et al., Plaintiffs-Appellants, v. CLARK EQUIPMENT COMPANY, Defendant-Appellee.

First District (2nd Division)   No. 85—2372

Opinion filed April 29, 1986.

John M. Burke and Molly C. Mason, both of Burke & Burke, Ltd., of Chicago, for appellants.

Susan L. Walker, of Wildman, Harrold, Allen & Dixon, of Chicago, for appellee.

PRESIDING JUSTICE BILANDIC delivered the opinion of the court:

Plaintiff Jerry Tennant, a crane operator, brought a personal injury action against defendant Clark Equipment Company, Inc., the manufacturer of the crane, Gleason Equipment Company, Inc., the lessor of the crane, and Ridge Tool Company, Inc., the manufacturer of a pipe wrench. Count II of plaintiff's complaint alleged that the crawler crane manufactured by Clark Equipment was defective and unreasonably dangerous. In Count V, plaintiff Carla Tennant realleged the same facts and requested damages for loss of consortium. For the sake of clarity, we will refer to both plaintiffs in the singular because Carla Tennant's loss of consortium claim is derivative. Defendant's motion for summary judgment was granted, and plaintiff appeals.

Plaintiff was injured on March 19, 1981, while he was employed as a crane operator for Roberts & Schaefer at a jobsite near Industry. A few days earlier, plaintiff was assigned to operate an 80-ton crawler crane manufactured by defendant Clark. When plaintiff began to operate the crane, he realized that it was rocking and unstable.

Plaintiff tried to correct the problem by attempting to adjust the stabilizer bolts on the arms of the crane with a 12- or 13-inch wrench. When that failed, plaintiff used penetrating oil or another type of lubricant on the bolts. Plaintiff consulted with his foreman, and they de-

cided to remedy the problem by sliding pieces of steel plate between the arms and the body of the crane to add stability. The plates, however, would vibrate out of place after about two hours of operation. Plaintiff's supervisor then called Gleason Equipment to send a mechanic to repair the crane.

On the date of the accident, Gleason Equipment sent one of its mechanics, Elmer Neis, to the jobsite. Neis had been employed by Gleason as a crane repairman for 15 years. In February 1981, approximately one month prior to plaintiff's accident, Neis visited the Roberts & Schaefer jobsite and discovered that the bolts on the Clark crane had to be replaced. The existing bolt had a "little hex" welded on to them which "would always snap off" under pressure from a wrench, and Clark Equipment had provided Gleason with modification kits so that the bolts would be replaced. The kits contained bolts with different sized heads and jam nuts. A representative from Clark Equipment had informed Neis that the kits were being sent out to keep the cranes from rocking. Neis did not attempt to replace the bolts in February but intended to do so at some future time.

Prior to plaintiff's accident, Elmer Neis had experienced difficulty removing the bolts from Clark 80-ton cranes because water and mud would come into contact with the bolts and corrode them. Usually, he would use a wrench with a "pipe extension" on it in order to get more leverage. It was common for workmen to remove the bolts in this fashion, and Neis had used up to four men on the wrench on several occasions in the past without incident.

In 1980, Neis had removed bolts from an 80-ton Clark crane in exactly this fashion while working with Ralph McCoy, a representative of Clark Equipment. On that occasion, Neis and McCoy had a discussion regarding the difficulty of removing the bolts, and McCoy agreed with Neis that using a "pipe extension" on the end of a wrench was "one way of getting them out." It was only when this method of removal did not work that Neis would resort to burning a hole in a bolt and welding a new bolt so that it would shrink and be easier to unscrew.

On March 19, 1981, Elmer Neis brought new bolts with him to the Roberts & Schaefer jobsite which were identical to those contained in the Clark Equipment modification kits. The existing bolts which needed to be replaced were rusty and muddy, according to plaintiff. Plaintiff informed Neis that he had already attempted to remove these bolts with a 12-inch wrench without success.

There is a dispute in the relevant testimony as to when plaintiff's injury occurred. Plaintiff stated that it was while they were attempt-

ing to remove the fourth and last bolt that he was hurt, while Neis recalled that the injury took place during removal of the second bolt. When the bolt in question could not be removed with a conventional crescent wrench, plaintiff went to his employer's tool shed and picked up a pipe wrench. Then someone picked up a piece of pipe to put on the end of the pipe wrench to add extra length and leverage; neither plaintiff nor Neis could recall who came up with the idea of using the "pipe extension" but they both remembered that the extension was approximately six feet in length. Plaintiff recalled that the pipe was a piece of electrical conduit which was "very soft" and had a "reputation of bending easily."

There is also a dispute in the testimony as to how many men were applying pressure to the wrench and pipe extension when the wrench broke and whether they were pulling or pushing on it at the time. Plaintiff recalled that he was working with Neis and two other men and that he was pushing on the outside or far end of the pipe. Neis remembered a total of only three men who were pulling on the wrench and pipe. When the handle of the wrench broke, plaintiff was catapulted forward and landed on large rocks on the ground. When he tried to stand up and move around, he felt pain in his back and left leg. He ultimately underwent a laminectomy and spinal fusion in November 1981.

Plaintiff filed suit, alleging that defendant had manufactured a defective and unreasonably dangerous crane in that it "was designed and manufactured without a proper opening for lubrication of the stabilizer pins, or other means of allowing such pins to be readily moved during foreseeable use." Plaintiff also alleged that defendant had failed to warn him about the dangers.

Defendant moved for summary judgment, arguing that the crane's bolts merely furnished a surface on which to attach the pipe wrench and played no other active part in the accident. Plaintiff was unable to depose Elmer Neis prior to the hearing on defendant's motion for summary judgment due to delays caused by Gleason Equipment's counsel. Plaintiff needed Neis' deposition to respond to defendant's motion and requested a postponement of the hearing on that basis. Judge Brian Duff denied the continuance and granted summary judgment in favor of defendant.

On January 7, 1985, plaintiff filed an emergency motion for sanctions against Gleason Equipment for its failure to produce Neis for a deposition. Plaintiff also filed a motion for reconsideration. Judge Duff ordered that Gleason Equipment produce Neis, and plaintiff deposed him. Neis then testified to the facts recounted above. Judge

Duff resigned to accept an appointment to the United States District Court. He was succeeded in this case by Judge Thomas Rakowski, who granted plaintiff's motion for reconsideration but affirmed the order that granted a summary judgment in favor of defendant. Judge Rakowski ruled that Neis' deposition did not change the essential fact of the case, which was that the rusty bolts were not the proximate cause of the accident. Plaintiff filed this appeal in which he was joined by defendant Ridge Tool, the maker of the wrench.

The narrow issue presented here is whether the crane's design was a proximate cause of plaintiff's injury or whether the broken pipe wrench was the only proximate cause of the injury. The trial court ruled that the broken wrench was the sole proximate cause.

■■ In reviewing a grant of summary judgment, we must decide whether "there is present any fact or facts on which reasonable persons may disagree, or inferences which may be fairly drawn from those facts and [which] may lead to different conclusions." (*Nolan v. Johns-Manville Asbestos & Magnesia Materials Co.* (1979), 74 Ill. App. 3d 778, 794, 392 N.E.2d 1352, *aff'd and remanded* (1981), 85 Ill. 2d 161, 421 N.E.2d 864.) If different inferences arise from even undisputed facts, the motion for summary judgment should be denied. *Welsh v. White Castle Systems, Inc.* (1985), 133 Ill. App. 3d 957, 962, 479 N.E.2d 944.

■■ In this case, the facts are not disputed. What is disputed is the proximate cause of the injury. Generally, "[w]hat constitutes the proximate cause of an injury in a particular case is ordinarily a question of fact to be determined from all the attending circumstances, and it can only be a question of law when the facts are not only undisputed but are also such that there can be no difference in the judgment of reasonable men as to the inference to be drawn from them." *Merlo v. Public Service Co.* (1942), 381 Ill. 300, 318, 45 N.E.2d 665.

Plaintiff alleges that proximate cause is a question of fact because defendant had notice of the alleged defect in its crane. In support, plaintiff uses Neis' deposition to show that defendant had issued modification kits with different bolts so that the original bolts that created problems would be removed and replaced. Neis had also replaced bolts previously with a Clark Equipment representative, Ralph McCoy, and they had discussed the difficulty of removing bolts. McCoy agreed with Neis that using a pipe extension was a proper way to remove the defective bolts. Therefore, plaintiff contends that his injury was foreseeable and that any intervening act did not relieve the defendant of liability.

■■ The leading case on foreseeability is *Winnett v. Winnett*

(1974), 57 Ill. 2d 7, 12-13, 310 N.E.2d 1, where our supreme court stated that "[f]oreseeability means that which it is *objectively reasonable* to expect, not merely what might conceivably occur." (Emphasis in original.) We have held that "[t]he test is whether the first wrongdoer should have reasonably foreseen the intervening cause as a natural and probable result of his negligence. [Citation.] An injury follows as a natural and probable result where an ordinarily prudent person ought to have foreseen that some injury might occur, although the precise injury which in fact occurred need not have been foreseen." *Filipetto v. Village of Wilmette* (1985), 135 Ill. App. 3d 781, 784, 482 N.E.2d 358.

■ In this case, plaintiff presented sufficient evidence to defeat defendant's motion for summary judgment. A trier of fact could find that defendant had sufficient notice of the alleged defect and that plaintiff's injury was foreseeable. In addition, evidence of the modification kits may be introduced as evidence of available alternative designs in a product liability action. *Smith v. Verson Allsteel Press Co.* (1979), 74 Ill. App. 3d 818, 828, 393 N.E.2d 598, *appeal denied* (1979), 79 Ill. 2d 624.

Defendant argues that the rusted bolts were not the proximate cause of the accident because they did nothing more than furnish a condition by which the injury was made possible. A similar defense was rejected by our supreme court in *Felty v. New Berlin Transit, Inc.* (1978), 71 Ill. 2d 126, 374 N.E.2d 203. In that case, the supreme court reinstated a verdict in favor of plaintiff and reasoned: "[T]his court has repeatedly stated that the question of proximate cause is ordinarily a question for the jury. *** In the case before us, the crucial issue is whether the negligence of the four defendants *** was foreseeable. A foreseeable intervening force does not break the chain of legal causation." 71 Ill. 2d 126, 130-31, 374 N.E.2d 203.

■ In addition, comparative-negligence principles apply to strict liability cases. (*Coney v. J.L.G. Industries, Inc.* (1983), 97 Ill. 2d 104, 454 N.E.2d 197.) Because of that, "the need is diminished for a policy which protects the remotely negligent defendant from liability for the full measure of damages." (*Filipetto v. Village of Wilmette* (1985), 135 Ill. App. 3d 781, 785, 482 N.E.2d 358, citing Schwartz, *Comparative Negligence* sec. 4.2 (1974).) Comparative-negligence principles include by necessity the factors of proximate cause and foreseeability, and courts are less willing to label an actor's conduct as a remote cause of the injury. *Michalak v. County of La Salle* (1984), 121 Ill. App. 3d 574, 578, 459 N.E.2d 1131, *appeal denied* (1984), 101 Ill. 2d 547.

34

We conclude that the deposition of Elmer Neis raised an issue of material fact regarding causation and foreseeability. For these reasons, the judgment of the circuit court of Cook county is reversed and the cause is remanded for further proceedings consistent with the views expressed herein.

Reserved and remanded.

STAMOS and SCARIANO, JJ., concur.