Argued and submitted December 21, 2004, affirmed December 28, 2005

## Abderrahim NAJJAR,
*Respondent,*

*v.*

## SAFEWAY, INC.,
a Delaware corporation;
and Wilson Lee,
*Appellants.*

## 0104-03817; A121182

125 P3d 807

Peter R. Chamberlain argued the cause for appellants. With him on the opening brief was Bodyfelt Mount Stroup & Chamberlain LLP. On the reply brief were Vicki M. Smith and Bodyfelt Mount Stroup & Chamberlain LLP.

John M. Petshow argued the cause and filed the brief for respondent.

Before Landau, Presiding Judge, and Brewer, Chief Judge, and Armstrong, Judge.

ARMSTRONG, J.

### ARMSTRONG, J.

Defendants appeal from a judgment entered on a jury verdict for plaintiff for personal injuries. We affirm.

Because the jury found in his favor, we present the facts in the light most favorable to plaintiff. Or Const, Art VII (Amended), § 3. On January 11, 2000, plaintiff worked his shift as a maintenance clerk at a grocery store in downtown Portland operated by defendant Safeway, Inc. Plaintiff went home at the end of his shift but returned to the downtown store to purchase some groceries later that evening, accompanied by Johnson, who was plaintiff's roommate and a meatcutter employed by Safeway. After they concluded their shopping, plaintiff and Johnson engaged in a social conversation in front of the store.

At that time, defendant Lee was employed by Safeway as head clerk, a position that included management authority over plaintiff. While plaintiff and Johnson were talking in front of the store, Lee left the store in pursuit of a shoplifter who was absconding with a bottle of wine. Lee called plaintiff and Johnson by their first names and shouted either "that guy's getting away," "help," or "come here." Lee then took off running after the shoplifter.

Plaintiff had his back to the store when Lee hailed him. He turned to see Lee running but did not see the shoplifter. Plaintiff and Johnson answered Lee's call by running after him. When plaintiff caught up to Lee at the edge of the store property, Lee gestured for plaintiff to continue the chase in a particular direction. Plaintiff complied, and the course to which he was directed led him into a dark parking lot. While crossing that parking lot, plaintiff ran off a small ledge and, in the ensuing fall, tore the anterior cruciate ligament in his left knee. The injury required two surgeries to repair and a lengthy period of physical therapy.

After the Workers' Compensation Board concluded that the injury was not compensable because it had not occurred in the course of plaintiff's employment, plaintiff pursued this action, alleging that defendants were negligent by calling him to chase the shoplifter and by not calling for him to stop once the shoplifter had left Safeway's property.

Before trial, defendants moved for summary judgment, arguing that the board's order precluded plaintiff from relitigating whether defendants requested plaintiff's help in the pursuit. Defendants argued that the board necessarily found that no such request was made and that plaintiff's negligence theories turned on that factual question. The trial court denied defendants' motion for summary judgment, and the case was tried to a jury.

At the close of evidence, defendants moved for a directed verdict, arguing that plaintiff's evidence was insufficient to support a jury verdict in his favor. The court reserved ruling on that motion. The jury determined that plaintiff's medical bills and lost wages totaled $32,658.80 and that his noneconomic damages totaled $20,000.00. However, the jury concluded that plaintiff's own negligence caused 41 percent of his damages. After the jury returned its verdict, the court denied defendant's motion for a directed verdict, and defendants moved for a judgment notwithstanding the verdict and for a new trial. The court denied those motions, and defendants appeal the judgment that the court entered on the jury verdict.

Defendants assign error to the trial court's denial of their motions for a directed verdict, for judgment notwithstanding the verdict, and for summary judgment. Defendants' arguments on their assignment of error to the denial of their motion for judgment notwithstanding the verdict are subsumed within their assignment of error on the denial of their motion for a directed verdict.[1] We first address those arguments and then turn to defendants' assignment of error to the denial of its motion for summary judgment.

In reviewing the denial of a motion for a directed verdict, we consider the evidence, including any inferences, in

---

[1] We have held in several cases that the denial of a motion for judgment notwithstanding the verdict is not reviewable. *See, e.g., Iron Horse Engineering v. Northwest Rubber,* 193 Or App 402, 415, 89 P3d 1249, *rev den,* 337 Or 657 (2004). However, contemporaneously with those decisions, we have issued opinions in which we reviewed rulings that denied motions for judgment notwithstanding the verdict. *See, e.g., Brown v. Washington County,* 163 Or App 362, 375, 987 P2d 1254 (1999), *rev den,* 331 Or 191 (2000). We need not resolve that inconsistency in our cases in order to resolve this case.

the light most favorable to the party that obtained a favorable verdict. *Brown v. J. C. Penney Co.*, 297 Or 695, 705, 688 P2d 811 (1984). If, after viewing the facts in that light, the moving party is entitled to judgment as a matter of law, then a directed verdict is appropriate. *Rutter v. Neuman*, 188 Or App 128, 133, 71 P3d 76 (2003).

■ Defendants moved for a directed verdict on the ground that there was insufficient evidence to support a finding that the harm that plaintiff suffered was foreseeable and that defendant's conduct was unreasonable.[2] In Oregon,

"unless the parties invoke a status, a relationship, or a particular standard of conduct that creates, defines, or limits the defendant's duty, the issue of liability for harm actually resulting from defendant's conduct properly depends on whether that conduct unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff. The role of the court is what it ordinarily is in cases involving the evaluation of particular situations under broad and imprecise standards: to determine whether upon the facts alleged or the evidence presented no reasonable factfinder could decide one or more elements of liability for one or the other party."

*Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 17, 734 P2d 1326 (1987). Defendants argue, and plaintiff does not dispute, that no duty-defining status, relationship, or standard existed between plaintiff and defendants. Thus, the legal question is whether plaintiff produced evidence from which the jury could find that the harm that befell plaintiff

---

[2] Defendants argue that they should prevail because plaintiff's complaint is defective in that he "did not plead the foreseeability to defendants of an unreasonable risk of harm to persons in plaintiff's position." To the extent that defendants' challenge is to the complaint as written, defendants were required to assign error to the trial court's ruling, if any, on a pretrial motion to dismiss, motion for judgment on the pleadings, or motion for summary judgment in which they made that argument. Defendants make no such assignment of error.

In any event, because defendants challenge the sufficiency of the facts alleged in plaintiff's complaint as part of their motion for a directed verdict, we must read plaintiff's complaint as encompassing all of the facts introduced into evidence at trial. ORCP 21 G(3); ORCP 23 B. That is, because defendants argued *at trial* the defense of failure to state ultimate facts constituting a claim, we must treat all the facts received into evidence as if they had been raised in the pleadings. Thus, plaintiff's complaint is sufficient so long as plaintiff presented evidence from which the jury could infer a reasonably foreseeable risk of harm. He did.

was foreseeable and that defendants' conduct was unreasonable in light of that risk. *Solberg v. Johnson*, 306 Or 484, 490, 760 P2d 867 (1988).

■ We first address whether the harm that befell plaintiff was foreseeable. Although the employment relationship is not a duty-defining relationship in this case, plaintiff's identity as defendant Safeway's off-duty employee is nonetheless relevant in analyzing whether the risk of harm to plaintiff was foreseeable. In *Fuhrer v. Gearhart By The Sea, Inc.*, 306 Or 434, 437, 760 P2d 874 (1988), the Supreme Court explained that, "[i]n the absence of a duty arising from a [special relationship], a defendant may be liable for conduct which is unreasonable in the circumstances if that conduct results in harm to a plaintiff and the risk of harm to the plaintiff or the class of persons to whom the plaintiff belongs was foreseeable." Furthermore, in *Faverty v. McDonald's Restaurants*, 133 Or App 514, 538, 892 P2d 703 (1995), *rev dismissed*, 326 Or 530 (1998), we explained that *Fazzolari* stands for the proposition that "the law does not provide a remedy in common law negligence for an injured plaintiff unless the kind of harm that the plaintiff suffered arises from 'unreasonable' conduct that creates a foreseeable risk of harm *to the particular plaintiff in the case*." (Emphasis added.) That is, the plaintiff must be a "foreseeable plaintiff[ ]." *Allstate Ins. Co. v. Tenant Screening Services, Inc.*, 140 Or App 41, 50, 914 P2d 16 (1996) (citing *Fuhrer*, 306 Or at 437).

In this case, the jury could find that it was foreseeable that plaintiff, as an off-duty employee, would be more likely to respond to defendant Lee's exhortation than would a stranger. As we have explained, albeit in a different context, the relationship between an employee and an employer "is not an arm's length one between strangers." *Bodewig v. K-Mart, Inc.*, 54 Or App 480, 486, 635 P2d 657 (1981), *rev den*, 292 Or 450 (1982).

Furthermore, plaintiff introduced testimony that it was dark at the time of the incident and that, although the Safeway parking lot was reasonably well lit, the area beyond the Safeway property was not. The testimony also reflected that, as plaintiff chased after Lee, he was running quite

quickly.[3] From those facts, the jury could infer that a reasonable employer could foresee the risk to its off-duty employee of a fall from running quickly, in response to a call for help from the employer, in a poorly lit environment at night. That defendants could not necessarily foresee the particular mechanism by which plaintiff was injured is of no import. The foreseeability analysis is concerned with the "generalized risk of the types of incidents and injuries that occurred rather than the predictability of the actual sequence of events." *Fazzolari*, 303 Or at 13. Thus, we cannot say on these facts that evidence of the foreseeability of the risk of harm to plaintiff was insufficient as a matter of law.

■ Furthermore, there was evidence to support a finding by the jury that defendants' conduct was unreasonable in light of that risk. Viewed in the light most favorable to plaintiff, the evidence showed that Lee called out for plaintiff's help to catch the shoplifter and, in fact, directed him to continue the pursuit after Lee abandoned it. The jury could infer that Lee did so in order to apprehend a shoplifter who had stolen a bottle of wine. The jury could conclude that it was unreasonable for defendants to expose plaintiff, an off-duty employee likely to be inclined to respond to his employer's requests, to a foreseeable risk of harm by involving him in the pursuit simply to prevent the loss of a bottle of wine.

It bears repeating that the question before us is whether there was any evidence from which the jury could conclude that defendant's unreasonable conduct created a foreseeable risk of harm to this plaintiff. The Supreme Court has cautioned us that we are to conclude that a reasonable jury could not come to such a conclusion only in the "extreme case." *Donaca v. Curry Co.*, 303 Or 30, 38, 734 P2d 1339 (1987). The "extreme case" contemplated by *Donaca* is the case that falls beyond the outer margins of debatable conduct. The cases that fall beyond the outer margins are few and far between and should be identified *ad hoc*. Mindful of that rule, we cannot conclude that this case is extreme. In this case, a supervisor called on an off-duty employee to

---

[3] That fact is relevant because one of plaintiff's allegations of negligence was that Lee failed to tell him to stop pursuing the shoplifter once the shoplifter left Safeway property.

engage in a potentially dangerous pursuit of a shoplifter into a darkened area in order to thwart the theft of a bottle of wine. The jury could conclude that such conduct was unreasonable and created a foreseeable risk of harm to plaintiff.

Defendants insist that, unless we conclude as a matter of law that defendant's conduct was reasonable, crime victims will be liable to their volunteer rescuers. Such a result is contrary to public policy, they insist.[4] Defendants' concerns are valid, but the established law of negligence in this state provides a safeguard. As the Supreme Court explained in *Donaca*, although the question of whether a defendant's conduct is reasonable under the circumstances is an empirical question, that does

> "not mean that [such a question] must in every case be submitted to a jury; in an extreme case a court can decide that no reasonable factfinder could find the * * * defendant's conduct to have fallen below acceptable standards. Nor do these questions invariably require an evidentiary trial, although they concern facts; some facts are within judicial notice, provided that an opportunity is afforded to show the contrary."

303 Or at 38-39.

---

[4] Noting the absence of Oregon precedent on this point, defendants rely on a number of cases from other jurisdictions and state that they "have been unable to find any precedent for a crime victim to be held liable under similar circumstances." Defendants surmise that "[t]he absence of such cases seems, of itself, to support the defendants' position that a case like this should be decided as a matter of law."

In fact, an Illinois court upheld a jury verdict in favor of a plaintiff on facts very similar to those presented by this case. In *Jacobsma v. Goldberg's Fashion Forum*, 14 Ill App 3d 710, 303 NE2d 226 (1973), the plaintiff was a customer who, along with his wife, had just entered the defendant's clothing store when the store manager pointed towards him and shouted, "Stop, thief!" The plaintiff observed a man running towards him. The plaintiff tackled the shoplifter and, in the process, injured his shoulder. The shoplifter ultimately escaped. The court allowed the would-be-rescuer plaintiff to recover damages from the crime-victim defendant. *Id.* at 714, 303 NE2d at 229-30; *see also Welsh v. White Castle Systems, Inc.*, 133 Ill App 3d 957, 962-63, 479 NE2d 944, 948 (1985) (reversing summary judgment against customer of fast food restaurant in action to recover for personal injuries customer incurred when he responded to a security guard's call for help in the midst of a knife fight with a thief).

We decline defendants' invitation to adopt the reasoning of the non-Oregon cases they cite; nor do we adopt the reasoning of the Illinois cases. The reasoning of neither set of cases fits within the established principles of Oregon negligence law.

■ The question presented by cases such as this one is whether a crime victim acts reasonably in calling for help and exposing rescuers to a particular foreseeable risk of harm. The answer to that question turns "on the facts of a concrete situation." *Fazzolari*, 303 Or at 4. Here, we think that whether defendants acted reasonably in calling for help to recover a stolen bottle of wine and exposing an employee to the hazards that that might entail is a close enough call that the jury had to make it. Presented with a more extreme set of facts, a court could act without error in concluding that no reasonable factfinder could find that the victim's call for help was unreasonable conduct in light of the foreseeable harm that the rescuer could suffer. *See, e.g.*, *Hefty v. Comprehensive Care Corporation*, 307 Or 247, 253, 766 P2d 1026 (1988) (upholding a trial court's grant of summary judgment in an "extreme case" on a negligence question usually reserved for the jury). But in the cases that are not extreme— such as this one—the question of the reasonableness of the defendant's conduct remains a jury question.

■ Defendants' final argument as to why the trial court should have granted their motion for a directed verdict is that "[t]here was no evidence that defendants' conduct breached the standard of care of a reasonably careful food retailer." It is true that, as a result of the trial court's determination that plaintiff's proffered expert was not qualified to testify as an expert, plaintiff did not present expert testimony as to a particular standard of care. However, plaintiff's counsel asked both Lee and Kelly—the manager of the downtown Safeway store—what they thought the standard of care was. Both men responded that the standard of care of a food retailer when confronting a shoplifter was "common sense." Even assuming that expert evidence was necessary to establish the standard of care, the jury could find that defendants' conduct was unreasonable in light of the common-sense standard identified by two witnesses with retail grocery management experience to be the standard of care. The trial court did not err in denying defendants' motion for a directed verdict.

■ Defendants argue that the trial court erred in denying their motion for summary judgment on the ground of issue preclusion because "[t]he basis for the [board]'s decision was, in part, its finding that defendant Lee did not direct or

order plaintiff to pursue the suspect, nor did he ask plaintiff to help him do so." Defendants' theory is that the board's order precluded plaintiff from relitigating those facts.

 In an appeal from a judgment after trial, the denial of a motion for summary judgment is not reviewable unless the summary judgment motion raised only an issue of law about which the facts found at trial could have made no difference. *Payless Drug Stores v. Brown*, 300 Or 243, 246-47, 708 P2d 1143 (1985). Relying on *Stromme v. Nasburg and Co.*, 80 Or App 26, 29, 721 P2d 847, *rev den*, 302 Or 35 (1986), plaintiff argues that a denial of a motion for summary judgment on an issue preclusion theory is not reviewable because such a theory requires an evidentiary showing. However, where a motion for summary judgment on the question of claim or issue preclusion presents only a question of law on undisputed facts, we can review the denial of that motion under *Payless Drug Stores. See Lutterman and Lutterman*, 195 Or App 124, 129-30, 97 P3d 664 (2004) (distinguishing *Stromme* and reviewing the denial of a motion for summary judgment on the question of claim preclusion); *Stevens v. Horton*, 161 Or App 454, 460-61, 984 P2d 868 (1999), *rev den*, 331 Or 692 (2001) (explaining why the denial of a motion for summary judgment on the basis of issue preclusion can be reviewed under *Payless Drug Stores*). In this case, the question whether the board's decision precluded plaintiff from relitigating certain facts does not involve disputed facts, and its resolution turns on a purely legal question. Thus, we may review the trial court's denial of defendants' summary judgment motion.

The board's order reversed the order of an administrative law judge (ALJ) that concluded that plaintiff's injury was compensable under the workers' compensation law. The board applied the unitary work-connection test, which requires that a compensable injury must (1) arise out of employment and (2) be sustained in the course of employment. *See Norpac Foods, Inc. v. Gilmore*, 318 Or 363, 366, 867 P2d 1373 (1994). The board correctly recognized that "[b]oth elements of the test must be satisfied to some degree." *See Fred Meyer, Inc. v. Hayes*, 325 Or 592, 596, 943 P2d 197 (1997).

Although the board adopted the ALJ's findings of fact, it drew different conclusions from those facts. Specifically, with regard to whether the injury was sustained in the course of plaintiff's employment—which involves the time, place, and circumstances of the injury—the board stated that it was "not persuaded that the 'course of' employment prong of the test has been satisfied even slightly." The board based that conclusion on the facts that plaintiff was not working at the time of the injury and that he was injured performing a task that was not part of his normal job duties. The board's conclusion on the "course of employment" factor alone would have been sufficient for its conclusion that the injury was not compensable.

However, the board went on to state that it concluded "that the 'arising out of' element is weak at best." Despite the finding of fact by the ALJ—which the board adopted—that plaintiff "and Mr. Johnson heard Mr. Lee calling to them and interpreted this as a request for assistance," the board said that

> "[t]he record contains no evidence that Lee gave claimant any 'directive' to chase the shoplifting suspect. Mr. Lee stated that he called to claimant and Johnson and said their first names. * * * He further indicated that he did not ask the men to help him or to chase the alleged shoplifter. * * *

> "* * * Based on the testimony of the witnesses at hearing, it has not been established that Mr. Lee 'directed' [plaintiff] or Mr. Johnson to pursue the alleged shoplifter. Thus, the causal connection between claimant's employment and his knee injury is minimal at best."

Defendants argue that the board's conclusion on the "arising out of employment" prong precludes plaintiff from relitigating whether defendant Lee asked plaintiff to help pursue the shoplifter.

In *Nelson v. Emerald People's Utility Dist.*, 318 Or 99, 104, 862 P2d 1293 (1993), the Supreme Court explained the five requirements for the application of issue preclusion:

"1. The issue in the two proceedings is identical.

"2. The issue was actually litigated and was essential to a final decision on the merits in the prior proceeding.

"3. The party sought to be precluded has had a full and fair opportunity to be heard on that issue.

"4. The party sought to be precluded was a party or was in privity with a party to the prior proceeding.

"5. The prior proceeding was the type of proceeding to which this court will give preclusive effect."

(Citations omitted.) The board's order fails the second requirement and, thus, does not preclude plaintiff from litigating whether Lee requested that plaintiff pursue the shoplifter.

As noted above, the board's conclusion that the injury did not occur in the course of plaintiff's employment was dispositive of the question whether the injury was compensable. On the other hand, the board's conclusion that the "causal connection"—the question of whether the injury arose out of plaintiff's employment—was "minimal at best" would not be dispositive. *See Fred Meyer*, 325 Or at 596 ("The work-connection test may be satisfied if the factors supporting one prong of the statutory test are minimal while the factors supporting the other prong are many."). Thus, the board's statements about whether the injury arose from plaintiff's employment and its statements about whether defendant Lee requested plaintiff's assistance were not essential to the board's determination that the injury was not compensable.

Issue preclusion applies only when the issue was essential to the decision in the prior proceeding. *Chavez v. Boise Cascade Corporation*, 307 Or 632, 637, 772 P2d 409 (1989). Therefore, the board's order has no preclusive effect on the question whether defendant Lee asked plaintiff to pursue the shoplifter. The board's order would be preclusive only on the question whether the injury occurred in the course of plaintiff's employment, *i.e.*, whether the time, place, and circumstances of his injury were work related. Plaintiff's theories of negligence do not hinge on those facts. Therefore,

the trial court did not err in denying defendants' motion for summary judgment.

Affirmed.