242 P.3d 723 (2010)
238 Or. App. 468
GREENWOOD PRODUCTS, INC., an Oregon corporation; and Jewett-Cameron Lumber Corp., an Oregon corporation, Plaintiffs-Respondents Cross-Appellants,
v.
GREENWOOD FOREST PRODUCTS, INC., an Oregon corporation; Jim Dovenberg, an individual; and Bill LeFors, an individual, Defendants-Appellants Cross-Respondents.
050302553; A135701.
Court of Appeals of Oregon.
Argued and Submitted September 23, 2009.
Decided November 10, 2010.
*724 Maureen Leonard argued the cause for appellants-cross-respondents. With her on the briefs was Ron D. Ferguson.
Kevin H. Kono, Portland, argued the cause for respondents-cross-appellants. With him on the briefs were Robert D. Newell and Davis Wright Tremaine LLP.
Before HASELTON, Presiding Judge, and ARMSTRONG, Judge, and CARSON, Senior Judge.
HASELTON, P.J.
Defendants appeal from a general judgment in favor of plaintiffs on their claim for breach of an asset purchase agreement (APA), which provided for several bulk transfers of inventory from defendant Forest Products to plaintiff Greenwood, and from a supplemental judgment awarding attorney fees.[1] Plaintiffs cross-appeal, asserting that *725 the trial court erroneously failed to rescind one of three promissory notes that were issued as final payments for the inventory. We write to address (1) defendants' assignments of error on appeal concerning whether the trial court erred in denying their motions for a directed verdict against plaintiffs' breach of contract claim on the ground that, as a matter of law, the APA did not obligate Forest Products to accurately state or account for its inventory; (2) defendants' challenges to the supplemental judgment awarding attorney fees; and (3) plaintiffs' cross-appeal. As explained below, we conclude that defendants were entitled to a directed verdict on plaintiffs' claim for breach of the APA; that some aspects of the supplemental judgment were erroneous; and that plaintiffs' contention on cross-appeal is unreviewable because they failed to preserve it before the trial court. Accordingly, we reverse on appeal and affirm on cross-appeal.

I. MATERIAL FACTS AND PROCEDURAL HISTORY
In reviewing the trial court's denial of defendants' motions for a directed verdict "we consider the evidence, including any inferences, in the light most favorable" to plaintiffs, "the party that obtained a favorable verdict." Najjar v. Safeway, Inc., 203 Or.App. 486, 489-90, 125 P.3d 807 (2005). If, after viewing the facts in that light, defendants are "entitled to judgment as a matter of law, then a directed verdict is appropriate." Id. at 490, 125 P.3d 807. We state the facts material to plaintiffs' breach of contract claim accordingly.
As of 2002, defendant Forest Products was in the business of purchasing, processing, and selling industrial wood and other products to original equipment manufacturers. In order to provide its customers with prompt service, Forest Products maintained substantial inventory at numerous locations throughout the United States.
On February 25, 2002, Forest Products entered into an agreementviz., the APAwith plaintiff Jewett-Cameron. Jewett-Cameron is a manufacturer and wholesale distributor of lumber and other building materials. Plaintiff Greenwood is a wholly owned subsidiary of Jewett-Cameronand is the entity that ultimately operated under the APA.
In general terms, according to the APA, Jewett-Cameron agreed to purchase, inter alia, Forest Products' inventory over a two-year period. As pertinent to the dispositive issues in this case, the APA provided:
"1.4. Purchase of Inventories. [Forest Products] agrees to sell and Jewett-Cameron agrees to purchase [Forest Products'] inventories, work in process, raw materials and packaging (except the portions which are unusable as agreed by the parties prior to transfer) in stages over a two year period following closing, for a price equal to [Forest Products'] cost (including transportation, processing and storage) plus a premium of 2%, as follows: immediately upon execution of this agreement and prior to closing the parties will separate the inventory into seven discrete units by location. [Forest Products] shall sell and Jewett-Cameron shall purchase the first unit of inventory on May 31, 2002, and [Forest Products] shall sell and Jewett-Cameron shall purchase an additional unit at the end of each three month period thereafter until all of the units of inventory have been sold and purchased. The specific unit of inventory to be sold at the end of each three month period shall be selected by mutual agreement of the parties. Payment for each unit of inventory shall be due 30 days after purchase. Conveyance shall be by Bill of Sale.
"1.5. Interim Services and Supply Agreement. During the two-year inventory transition period [Forest Products] agrees to replenish, process, and maintain inventories in keeping with its past practice at each of the locations where the inventory has not yet been sold. Jewett-Cameron agrees to provide [Forest Products] with all management and administrative services associated with purchasing, processing, and maintaining [Forest Products'] inventory at each such location for a fee of $150 per month for each unit of the 7 units of inventory described in Section 1.4 above that is retained by [Forest Products]. *726 During the inventory transition period [Forest Products] will also sell inventory from such retained locations in the regular course of business exclusively to Jewett-Cameron to allow Jewett-Cameron to fill customer orders. Jewett-Cameron shall pay 102% of [Forest Products'] costs for all such purchases and payment shall be due 30 days after invoice and shipping. Jewett-Cameron agrees to assume the credit risk associated with its customers and to bear the loss of nonpayment."
(Section headings in italics and boldface in original; emphasis added.)
To summarize, under the terms of the APA, the parties contemplated seven bulk transfers of inventory from Forest Products to Greenwood. Donald Boone, the person primarily responsible for finance and administration at Jewett-Cameron, explained that the country was divided into seven geographic areas and that the inventory in a geographic area included product in warehouses and treating facilities as well as product that was en route from one location to another. According to Boone, when the inventory in a geographic area could be "identif[ied]," regardless of whether it was "in process, or en route" or "on the ground," a bulk transfer would occurthat is, Greenwood would purchase that area's inventory.
Before a bulk transfer, Greenwood filled customer orders with existing inventory from one of Forest Products' sites and paid Forest Products the cost of that inventory plus a two percent premium, and Forest Products replenished the inventory that had been sold. After a bulk transfer, however, Boone testified that Forest Products "[was] out of the picture as far as * * * that product line, and that area. And from there on Greenwood would do the replenishing, as opposed to Forest Products[.]"
Although the parties intended that the seven bulk transfers would occur over a two-year period, the parties completed the transfer of inventory within a period of 13 to 14 months. Greenwood issued three promissory notes as final payment for the inventory. The first two notes were issued in March 2003 in the principal amounts of $2,376,896.23 and $512,663.89.[2] The third note was issued in June 2003 in the principal amount of $510,823.[3]
After the close of Greenwood's fiscal year in August 2003, its auditor identified problems with Greenwood's books. Boone directed Steven Schmidt, a certified public accountant with Greenwood's local accounting firm, to examine the books. Ultimately, Schmidt received permission to examine Forest Products' books as well.
Then, in November 2004, after spending a significant period of time reconstructing the books of both companies and discovering various discrepancies, Schmidt concluded, as pertinent to the issues in this case, that "Greenwood had overpaid Forest Products for inventory that it didn't receive" in the amount of "$819,731.68." Schmidt attributed many of the discrepancies on Greenwood's books to Jim Fahey.
Fahey had been Forest Products' head bookkeeper before the parties entered into the APA. He was one of Forest Products' employees who, under the terms of the APA, was hired by Greenwood as its head bookkeeper.[4] In fact, Fahey was responsible *727 for keeping the books of both Forest Products and Greenwood after the parties executed the APA. According to Boone, employees such as Fahey spent "part of the day * * * wearing a Forest Products hat, and part of the day * * * wearing a Greenwood hat, because * * * [t]he activities of both companies had to function more or less in parallel."
Also in the fall of 2004, as Schmidt was finishing his reconstruction of the parties' books, Dovenberg came to believe that Fahey might be embezzling from Dovenberg's accounts at Forest Products. In May 2005, Forest Products obtained a civil judgment for over $369,000 against Fahey. Fahey was also convicted of embezzlement before the trial in this case began.
In light of those facts, plaintiffs proceeded under the following theory: Fahey hid his embezzlement from Forest Products by making it appear as though Greenwood was receiving inventory. As a consequence of Fahey's conduct, Greenwood paid for inventory that it did not receive. Although Fahey was an employee of Greenwood, Forest Products retained the right to control Fahey's work on behalf of Forest Products. Accordingly, in plaintiffs' view, Forest Products was responsible for Fahey's conduct that resulted in Greenwood's approximate $819,000 overpayment for nonexistent inventory.
Consistently with that theory, in March 2005, while Forest Products was in the process of obtaining its civil judgment against Fahey, plaintiffs filed a complaint against defendants for breach of contract and reformation. As pertinent to the issues in this case, plaintiffs alleged, in part:
"8.
"The [APA] required [Greenwood] to pay for [Forest Products'] inventory at cost plus two percent. [Forest Products] intentionally or negligently misstated its cost of inventory such that [Greenwood] signed notes and paid cash for that inventory at a figure that was $819,731.68 higher than it should have been. [Forest Products'] misstatement of its cost of inventory was a breach of the [APA]."
(Emphasis added.)
Defendants answered, specifically denying paragraph 8 of plaintiffs' complaint. They also raised a counterclaim based on plaintiffs' failure to pay the promissory notes and alleged an entitlement to attorney fees pertaining to that counterclaim. Defendants also raised several affirmative defenses and other counterclaims that are not at issue on appeal.
Then, in June 2005, a few months after plaintiffs filed their complaint against defendants, Jewett-Cameron made a payment on the promissory notes in the amount of $2,138,170.49.
In May 2006, the case went to trial. In the course of the trial, the issues that had been framed by the allegations in plaintiffs' complaint changed in two significant respects. First, plaintiffs amended their complaint to add a claim for rescission of the three promissory notes. Second, plaintiffs were allowed to amend the allegations of paragraph 8 concerning the conduct that constituted a breach of contract. Those two procedural events, and their circumstances, are central to our analysis and disposition of both the appeal and the cross-appeal. Accordingly, we recount them in some detail.
After opening statements, plaintiffs moved to amend their complaint to add an additional claim for rescission of the notes on the ground that there was a mutual mistake about the amount that Greenwood owed to Forest Products for inventory. In explaining the need for this amendment, plaintiffs' attorney reiterated that he was seeking to rescind all three notes "because they aren't segregated." Plaintiffs' attorney explained that, in light of plaintiffs' over $2,000,000 payment on the notes in June 2005, the trial court should "undo the notes, then the payments are what they are, and the inventory is what it is, and either we owe some more money or we don't." The trial court initially deferred ruling on plaintiffs' motion, but ultimately granted it over defendants' objection.
Thereafter, at the close of plaintiffs' case, defendants moved for a directed verdict on, inter alia, plaintiffs' breach of contract claim. Defendants asserted three grounds in support of their motionthe first of which was predicated on an asserted legal entitlement to judgment as a matter of law, while *728 the other two were based on the sufficiency of plaintiffs' evidence at trial.
First, defendants contended that they were entitled to a directed verdict on plaintiffs' breach of contract claim because plaintiffs "failed to prove any specific act which would constitute a breach of the contract between the parties[.]" According to defendants, plaintiffs' breach of contract claim was predicated exclusively on the allegation in paragraph 8 of the complaint, 238 Or.App. at 474-75, 242 P.3d at 727, that Forest Products had "intentionally or negligently misstated its cost of inventory." Defendant asserted that that alleged conduct did not, and could not, constitute a breach of the APA because
"the [APA], which constitutes the original contract between the parties, simply states `[Forest Products] agrees to sell, and Jewett-Cameron agrees to purchase, [Forest Products'] inventories, work in process, raw materials and packaging ... in stages over two year period ... and prior to closing the parties will separate the inventory into seven discrete units by location.'"
(Emphasis added.) Stated differently, defendants contended that, as a matter of law, the APA did not obligate Forest Products to accurately state the value of its inventory.
Second, defendants contended that plaintiffs failed to prove that Forest Products either intentionally or negligently misstated the cost of its inventory. According to defendants, there was no evidence that defendants or their agents had "participated in establishing the level of the inventory" and, thus, "there can be no misstatement [by defendants or their agents] of cost of inventory, and certainly neither `intentionally or negligently.'"
Third, defendants contended that, even if plaintiffs had proved that Forest Products had negligently misstated its cost of inventory, plaintiffs could not recover damages for economic losses based on a negligent misrepresentation without a "special relationship" between the partiesand, here, plaintiffs had not established that such a relationship existed.
Plaintiffs' attorney remonstrated that their claim was, in fact, one for breach of contractand was not, as recast by defendants, a tort claim either for fraud or for negligent misrepresentation, requiring proof of additional elements.[5] Further, plaintiffs asserted that "the manner in which the inventory was misstated is irrelevant" and that "the amount of inventory that was paid for was not the amount of inventory delivered, and that constitutes a breach." Consistently with those assertions, plaintiffs then moved to amend the allegations in paragraph 8 of their complaint to eliminate the words "intentionally or negligently" so as to eliminate the issues raised in defendants' motion.
The court denied defendants' motion for a directed verdict as to the breach of contract claim without elaboration; however, it did not expressly rule on plaintiffs' motion to amend their complaint. Nevertheless, the parties and the court appeared to understand that plaintiffs were proceeding on the theory that Forest Products breached the contractthe APAby misstating the amount of its inventory.
Regardless of that apparent understanding, at the close of defendants' case, plaintiffs again moved to amend the second sentence in paragraph 8 to add the language "`[Forest Products] erroneously accounted for its inventory.'"[6] The trial court ultimately granted that motion.
Thereafter, at the close of all the evidence, at which point plaintiffs were proceeding on *729 the theory that Forest Products' erroneous accounting constituted a breach of contract, defendants renewed their motion for a directed verdict on the breach of contract claim "for all the reasons previously announced." Again, the court denied the motion without elaboration.
Ultimately, as pertinent to the issues on appeal, the jury returned a verdict in favor of plaintiffs on the breach of contract claim, which included damages in the amount of $819,731.68 for the overpayment of inventory.[7] The jury also found in favor of defendants on their counterclaim for nonpayment on the promissory notes in the amount of $1,043,757.00.
After the jury returned its verdict, the two equitable claims for rescission and reformation remained for the court's consideration. As they had previously, when seeking to amend their complaint to add the claim for rescission, 238 Or.App. at 474-76, 242 P.3d at 727-28, plaintiffs contended that the "notes at issue" should be "rescinded in their entirety." (Emphasis added.) According to plaintiffs, in light of the approximate $819,000 overpayment, if all three notes were rescinded, then their payment of over $2,000,000 in June 2005 would constitute complete payment "for all of the inventory received." The trial court found in defendants' favor on the claim for rescission of the notes, reasoning that "Greenwood did not establish that it promptly and clearly disaffirmed the contract between the parties, and that Greenwood did not offer to, nor could it have, restored the parties to the status quo ante by returning the inventory purchased from Forest Products." The trial court subsequently entered a general judgment resolving the parties' claims.[8]
After the court entered its judgment, plaintiffs and defendants each filed a petition for attorney fees. Defendants, invoking a prevailing party fee provision in the promissory notes, sought attorney fees for prevailing on their counterclaim for nonpayment of the notes.[9] As part of their fee request, defendants sought to recover over $30,000 in expert expenses. The trial court sustained plaintiffs' objection to those expenses, reasoning that our decision in Malot v. Hadley, 102 Or.App. 336, 794 P.2d 833 (1990), precluded such an award:
"I feel like I am bound by the Malot decision * * * to consider the term `expenses' in the contract to be the same as costs and disbursements under ORCP 68, and therefore that does not include expert witness fees or deposition costs.
"However, if, on appeal, the Court of Appeals decides to revisit that issue, and believes that I have the discretion to award them, I do find that those expert fees and costs are reasonable, and would award them. So at this point, I'm not awarding them, but if that decision is changed on appeal I would have done so, and will do so when it's remanded."
Thereafter, the trial court entered a supplemental judgment awarding both parties their respective attorney fees, but not awarding defendants the claimed expert expenses.

II. ANALYSIS
Defendants appealed the general judgment, and plaintiffs cross-appealed. Defendants also appealed the supplemental judgment for attorney fees.
On appeal, defendants raise seven assignments of error. For the reasons that follow, we agree with defendants that the trial court erred in denying their motions for a directed *730 verdict on the breach of contract claim, made at the close of plaintiffs' case and at the close of all the evidence. That resolution obviates the need to address defendants' other assignments of error except their final assignment pertaining to the supplemental judgment, particularly, the allowance of attorney fees to plaintiffs on the breach of contract claim and to the denial of defendants' requested recovery of expert expenses relating to defendants' counterclaim for nonpayment of the promissory notes. With regard to that assignment, we conclude that the award of attorney fees to plaintiffs must be reversed and that, under the attorney fee provision of the promissory notes, defendants are entitled to recover reasonable expert expenses. Finally, we determine that the sole assignment of error raised on plaintiffs' cross-appeal is not reviewable as unpreserved.

A. Defendants' Appeal

In their first assignment of error, defendants contend that the trial court erred in denying their motion for a directed verdict on plaintiffs' breach of contract claim at the close of plaintiffs' case on the ground that, as a matter of law, there could be no breach because the APA did not obligate Forest Products to properly state the cost of its inventory. With regard to that assignment, the parties essentially renew the arguments that they made in the trial court. See 238 Or.App. at 475-77, 242 P.3d at 728 (describing contentions).
We proceed from the premise that plaintiffs' claim for relief was a claim for breach of contract and not a tort claim for either fraud or negligent misrepresentation. Plaintiffs have throughout explicitly disavowed that their claim sounds in tort and, specifically, have never contended that, even if they somehow failed to plead and prove an actionable breach of contract, they would, nevertheless, be entitled to recover in tort.[10] Thus, plaintiffs' claim stands, or falls, on whether there was legally sufficient proof of a breach of the APA.
As recounted above, plaintiffs' position before the trial court, which they reiterate on appeal, is that Forest Products breached the APA by misstating the cost of its inventory. That isin the most elementary termsForest Products was contractually obligated to accurately state the cost of its inventory and breached that contractually imposed obligation. Thus, the essential first premise of plaintiffs' position was, and is, that Forest Products was obligated under the APA to accurately state the cost of its inventory. We understand plaintiffs to rely on two provisions of the APA as demonstrating that obligationnamely, (1) a provision in section 1.4 of the APA, stating that "[Forest Products] agrees to sell and Jewett-Cameron agrees to purchase [Forest Products'] inventories * * * for a price equal to [Forest Products'] cost (including transportation, processing and storage) plus a premium of 2%"; and (2) a provision in section 1.5, stating that, "[d]uring the two-year inventory transition period [Forest Products] agrees to replenish, process, and maintain inventories in keeping with its past practice at each of the locations where the inventory has not yet been sold."
Those provisions expressly require Forest Products to sell and, under certain circumstances, replenish its inventory and require Greenwood to purchase that inventory. However, neither provision expressly imposes an obligation on either Forest Products or Greenwood to accurately state the cost of that inventory to the other. Nor is such an obligation necessarily implicit in the obligations that those provisions do explicitly impose.[11] Thus, Forest Products was not *731 obligated under the APA to accurately state the cost of its inventory. Accordingly, defendants were entitled, as a matter of law, to prevail on their initial directed verdict motion against plaintiffs' breach of contract claim, and the trial court erred in denying that motion.
In the ordinary case, our determination that a trial court erred in denying a motion for directed verdict at the close of a plaintiff's case would be dispositiveand here, at least arguably, that could be so. Nevertheless, the procedural posture of this case is far from "ordinary" because of plaintiffs' efforts to amend the complaint concurrently with the court's consideration of the initial directed verdict motion. As noted, at the same time that the court denied the initial directed verdict motion, it did not expressly rule on the motion to amendand, then, at the close of defendants' case and before the renewal of the directed verdict motion at the close of the evidence, the court did allow plaintiffs' motion to amend paragraph 8 to add the allegation that, rather than "intentionally or negligently misstat[ing] its cost of inventory," Forest Products had "erroneously accounted for its inventory." Given that procedural juxtaposition, and out of an abundance of caution, we proceed to address defendants' second assignment of error pertaining to the denial of the renewed motion for a directed verdict.
The short answer is that the intervening amendment was immaterial. Just as the APA imposed no obligation on Forest Products not to "misstate[ ] its cost of inventory," it imposed no obligation not to "erroneously account[ ] for its inventory." Even if the latter could be deemed to be somewhat broader than the former, ultimately both are predicated upon a purported contractual obligation for Forest Products to accurately account for its inventory to Greenwood. Again, the APA imposes no such obligation explicitly or by necessary implication. Accordingly, because Forest Products was not under an obligation to accurately account for the cost of its inventory, defendants were entitled to a directed verdict on plaintiffs' breach of contract claim at the close of all evidence as a matter of law, and the trial court erred in denying that motion.
Because defendants were entitled to a directed verdict on the breach of contract claim, we must reverse the judgment as to that claim. That disposition obviates the need to consider defendants' third through sixth assignments of error.
We turn to defendants' seventh and final assignment of error pertaining to the trial court's supplemental judgment. In the supplemental judgment, the trial court, as noted, awarded plaintiffs attorney fees as the prevailing party on their breach of contract claim and also awarded defendants attorney fees as the prevailing party on their counterclaim for nonpayment of the promissory notes, but denied defendants' request for recovery of expert expenses. Given our reversal of the judgment on the breach of contract claim, the attorney fee award to plaintiffs was erroneous and must be reversed. See ORS 20.220(3)(a) (providing that, when a party appeals a judgment to which an attorney fee award relates, "[i]f the appellate court reverses the judgment, the award of attorney fees or costs and disbursements shall be deemed reversed"). Further, for the following reasons, we conclude that the trial court erred in concluding that defendants were not entitled to recover expert expenses under the attorney fee provision in the promissory notes.
Defendants' contention in that regard is as follows:
"The promissory notes on which defendants prevailed provided that the prevailing party `shall be entitled to recover all expenses reasonably incurred' in addition to reasonable attorney fees. Defendants sought approximately $33,000 in expenses incurred for experts at trial. In Malot v. *732 Hadley, 102 Or.App. 336, 794 P.2d 833 (1990), this court held that when a contract awards `reasonable expenses' to the prevailing party it will be construed to mean only those expenses allowed in ORCP 68 A(2). See also Asiatic Company (USA), Inc. v. Expeditors International of Washington, Inc., 183 Or.App. 528, 52 P.3d 1112 (2002) (per curiam) (same).
"The promissory notes here are distinguishable. They mandate that the prevailing party will recover `all' expenses reasonably incurred in bringing an action to enforce payment of the notes. Clearly the parties intended to be made whole which means recovery of the significant litigation expenses defendants expended to gain their verdict."
(Record citations omitted.) We agree.
Generally, "a litigant is entitled to an award of attorney fees only if a statute or contract authorizes such an award." Guild v. Baune, 200 Or.App. 397, 402, 115 P.3d 249, adh'd to on recons., 201 Or.App. 514, 119 P.3d 281 (2005). Here, defendants prevailed on their claim for nonpayment on the promissory notes, each of which contained an attorney fee provision that entitled the prevailing party to recover "all expenses reasonably incurred in [an action to enforce payment of the note] including reasonable attorney fees."
In Malot, the plaintiffs sought attorney fees and costs under a provision of a promissory note that provided that, "`[i]f this note is placed in the hands of an attorney for collection, we, jointly and severally, agree to pay the reasonable fees and expenses of such attorney * * *.'" 102 Or.App. at 340, 794 P.2d 833. In its award of costs and disbursements, the trial court, in Malot, included a $248.21 payment to a court reporter for deposition services. Id. at 342, 794 P.2d 833. The defendant asserted that that award was improper. We agreed, reasoning that,
"[i]n the promissory note, defendants agreed to pay `the reasonable * * * expenses' of the noteholders' attorney. The proper analysis is to determine what the parties intended by the term `expenses.' In the absence of language evidencing a contrary intent, we think it reasonable to conclude that the parties intended the undefined contractual term `expenses' to mean those costs and disbursements provided for by statute or rule at the time the cost bill was submitted."
Id. (omission in original). We ultimately concluded in Malot that, because ORCP 68 A(2) did not define "costs and disbursements" to include deposition charges and because the parties cited no other statute or rule that would permit recovery of such charges, the trial court erred when it included the deposition costs in its award. Id.
Notwithstanding the trial court's reliance on Malot, our decision in that case is not conclusive here. The terms of the promissory note in Malot created an entitlement to "expenses" apart from the entitlement to attorney fees. Under those circumstances, we held that the parties in Malot intended the undefined term "expenses" to mean costs and disbursements. In this case, unlike in Malot, the term "all expenses" is inclusive of attorney fees such that we cannot conclude that the parties intended that term to mean only costs and disbursements.[12] Because the parties expressly intended to allow the prevailing party to recover "all expenses reasonably incurred in [an action to enforce payment of the note] including reasonable attorney fees" (emphasis added), we conclude that defendants are entitled to expert expenses incurred in this action to enforce the notes. For that reason, the trial court erred in denying defendants their requested expert expenses.

B. Plaintiffs' Cross-Appeal

Having resolved the issues on appeal, we turn to plaintiffs' cross-appeal. Their sole contention is that the "trial court erred in denying plaintiffs' claim for rescission as *733 to the June Note because the clear and convincing evidence showed that the parties were mutually mistaken regarding whether Greenwood owed Forest Products any money for inventory at the time the note was executed." Defendants respond that that contention is unreviewable because it was unpreserved before the trial court. We agree with defendants.
Generally, "[n]o matter claimed as error will be considered on appeal unless the claim of error was preserved in the lower court and is assigned as error in the opening brief in accordance with this rule[.]" ORAP 5.45(1). In Peeples v. Lampert, 345 Or. 209, 220, 191 P.3d 637 (2008), the Supreme Court explained that "[w]hat is required of a party to adequately present a contention to the trial court can vary depending on the nature of the claim or argument; the touchstone in that regard, ultimately, is procedural fairness to the parties and to the trial court." In that regard, "the appealing party's statements before the trial court must have alerted the trial judge and opposing counsel to the substance of the position that is advanced on appeal." State v. Taylor, 198 Or.App. 460, 469, 108 P.3d 682, rev. den., 339 Or. 66, 118 P.3d 802 (2005).[13]
Here, plaintiffs' consistent position before the trial court with regard to their claim for rescission of the promissory notes was that the court should rescind all three of the notes. In moving to amend the complaint to add a claim for rescission and in arguing the merits of that claim to the trial court, plaintiffs' attorney contended that the notes "aren't segregated" and should be "rescinded in their entirety." Further, plaintiffs' theory underlying their rescission claim was that, in light of the $819,000 overpayment, if the three notes were rescinded, then plaintiffs' payment of over $2,000,000 in June 2005 would constitute complete payment for the inventory. In other words, plaintiffs never alerted the trial court to the position that they now raise on appealthat is, that the court should rescind only the June note. Accordingly, plaintiffs' assignment of error on cross-appeal is unreviewable as unpreserved.

III. CONCLUSION
In sum, on appeal, the trial court erred in denying defendants' motions for a directed verdict because, as a matter of law, the APA did not obligate Forest Products to accurately state or account for the cost of its inventory. Our disposition of defendants' assignments of error concerning their directed verdict motions obviates the need to consider defendants' third through sixth assignments of error on appeal. On cross-appeal, plaintiffs' sole contention is unreviewable because they failed to preserve it before the trial court.
Given that disposition, it is necessary to remand the supplemental judgment awarding attorney fees to the trial court. Specifically, we reverse the award of attorney fees to plaintiffs on the breach of contract claim and remand for a determination of defendants' entitlement to fees on that claim. Further, although we affirm the award of attorney fees to defendants as the prevailing party on their counterclaim for nonpayment of the promissory notes, we remand to the trial court to award defendants their reasonable expert expenses as to that claim.
On appeal, (1) general judgment on plaintiffs' claim for breach of contract reversed; otherwise affirmed; (2) plaintiffs' attorney fee award in supplemental judgment on breach of contract claim reversed and remanded for a determination of defendants' entitlement to fees on that claim; (3) defendants' attorney fee award in supplemental judgment on counterclaim for nonpayment of promissory notes remanded for the court to award reasonable expert expenses to defendants. On cross-appeal, affirmed.
NOTES
[1] In this case, defendants are Greenwood Forest Products, Inc., and its two primary shareholders, Jim Dovenberg and Bill LeFors, and plaintiffs are two entitiesthat is, Greenwood Products, Inc. and Jewett-Cameron Lumber Corp. We refer to defendants and plaintiffs collectively as such and individually by name. Further, because of the similarity in the corporate names, we adopt the parties' convention of referring to Greenwood Forest Products, Inc., and Greenwood Products, Inc., as "Forest Products" and "Greenwood," respectively.
[2] The notes were made payable to Forest Products. Ultimately, one note was transferred to Dovenberg and the other was transferred to LeFors. The notes were structured in that way so that Dovenberg and LeFors would each receive the amount reflecting his proportional ownership interest in Forest Products.
[3] In addition to the third note, which was transferred to Dovenberg, Greenwood also issued a check to LeFors for over $100,000 as his proportional share of the amount owed for the prior inventory purchases.
[4] As pertinent, the APA provided, in part:

"Greenwood shall determine which, if any, of its employees it wishes to retain after it has disposed of its principal business and shall terminate all of its other employees on or before the closing. Greenwood shall indemnify and hold Jewett-Cameron harmless from any and all liability concerning any action, complaint, grievance, or proceeding filed by any employee for any act alleged to have been committed before the closing.
"Jewett-Cameron agrees to offer employment to all of the employees of Greenwood, but not necessarily at the same rate of compensation or with equivalent fringe benefits."
[5] Indeed, plaintiffs' counsel acknowledged that plaintiffs "can't prove [fraud based on an intentional misrepresentation], and haven't proved it. It's not part of this case."
[6] As we understand it, as amended, paragraph 8 read as follows:

"The [APA] required [Greenwood] to pay for [Forest Products'] inventory at cost plus two percent. [Forest Products] erroneously accounted for its inventory [Forest Products] intentionally or negligently misstated its cost of inventory such that [Greenwood] signed notes and paid cash for that inventory at a figure that was $819,731.68 higher than it should have been. [Forest Products'] misstatement of its cost of inventory was a breach of the [APA]."
(Amended text in boldface; deleted text in italics.)
[7] In addition to the damages for the overpayment of inventory, the jury also awarded plaintiffs damages of $52,592.09 for accounting fees that Greenwood incurred to reconstruct the accounting errors.
[8] With regard to the breach of contract claim, the general judgment awarded plaintiffs damages of $872,323.77that is, $819,731.68 for overpayment of inventory and $52,592.09 for accounting fees that Greenwood incurred to reconstruct the accounting errors.
[9] Each note contained the following attorney fee provision:

"In the event of an action to enforce payment of this note the prevailing party shall be entitled to recover all expenses reasonably incurred in such action including reasonable attorney fees, as determined by a court upon trial or any appeal therefrom."
[10] As noted, 238 Or.App. at 477 n. 5, 242 P.3d at 728 n. 5, plaintiffs' counsel acknowledged that plaintiffs could not prove fraud. Nor did plaintiffs contend that the parties' circumstances gave rise to the requisite "special relationship" for recovery based on a negligent misrepresentation. See, e.g., SFG Income Fund, LP v. May, 189 Or.App. 269, 274, 75 P.3d 470 (2003) ("In negligence actions seeking to recover for only economic harm, a plaintiff must establish a duty independent of the general obligation to prevent foreseeable harm.").
[11] We note, parenthetically, that plaintiffs never asserted before the trial court that Forest Products' conduct violated any cognizable obligation of good faith and fair dealing. Accord Morrow v. Red Shield Ins. Co., 212 Or.App. 653, 661-62, 159 P.3d 384 (2007) ("All contracts include an implied covenant of good faith and fair dealing. The law imposes a duty of good faith and fair dealing to facilitate performance and enforcement of the contract when it is consistent with and in furtherance of the agreed-upon terms of the contract, or where it effectuates the parties' objectively reasonable expectations under the contract; however, the implied covenant of good faith and fair dealing does not vary the substantive terms of the contract or impose obligations inconsistent with the terms of the contract." (Citation omitted.)).
[12] In fact, to conclude otherwise would render the reference to attorney fees as a type of expense meaningless. See ORS 42.230 ("In the construction of an instrument, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars, such construction is, if possible, to be adopted as will give effect to all.").
[13] See also State v. Rumler, 199 Or.App. 32, 41, 110 P.3d 115 (2005) ("[T]wo related questions about preservation that [appellate courts] often ask during oral argument: `If the trial judge were sitting here today, would he or she be surprised by your argument?' And, `If we were to reverse based on your argument, would the trial court feel "blindsided" by our ruling?'").